Approved: _____
LOUIS A. PELLEGRINO
Assistant United States Attorney

Before: HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

**17 MAG 9087**

- - - - - - - - - - - - - - - - - x
: **SEALED COMPLAINT**
UNITED STATES OF AMERICA :
:
- v. - : Violation of
: 18 U.S.C. § 1344.
ANDRE LAMAR, :
:
Defendant. :
: COUNTY OF OFFENSE:
: NEW YORK
:
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN McAULIFFE, being duly sworn, deposes and says that he is a New York City Police Detective ("NYPD"), and charges as follows:

COUNT ONE

(Bank Fraud)

1. From at least in or about May 2017 to the present, in the Southern District of New York and elsewhere, ANDRE LAMAR, the defendant, willfully and knowingly, did execute and attempt to execute a scheme or artifice to defraud a financial institution, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, LAMAR obtained a stolen check in the amount of $100,000

1

from the mail, and deposited the check into a bank account without the authorization or consent of the check's payee.

(Title 18, United States Code, Section 1344.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.   I am a police detective with more than 34 years' experience with the NYPD. I have been a detective since 1990 and have served with the 9th Precinct detective squad for almost 20 years. I have substantial experience investigating financial fraud, wire fraud, credit and banking fraud, robberies, grand larceny and burglary. I personally participated in the investigation of this matter. This affidavit is based upon my personal knowledge, my review of documents, and my conversations with law enforcement agents and other people. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise expressly indicated.

3.   Based on my conversations with financial officers employed by a Manhattan-based non-profit charity organization ("Charity-1"), I learned that, on or about May 25, 2017, Charity-1 mailed a bundle of approximately 39 checks in a U.S. postal service mailbox on the corner of East 13th Street and Broadway in Manhattan. Of the 39 checks that were mailed, only two checks were deposited by the intended payee. The rest of the checks are presumed to have been stolen, and indeed, two checks totaling $150,000 were fraudulently endorsed and cashed. One of those two checks is the subject of this Complaint. The second check, payable for $50,000, is the subject of another criminal charge in this district.[1]

a.   From my investigation and my conversations with Charity-1, I learned that the check that is the subject of this complaint was written in the amount of $100,000 (the "Check"). The intended payee of the Check was another charity

---

[1] See United States v. Algi Crawford and Jonathan Griffin, 17 Cr. 609 (NRB) (S.D.N.Y.).

2

that Charity-1 had intended to assist with funding ("Charity-2").

    b. From my investigation and my conversations with Charity-1, I learned that when Charity-1 discovered that Charity-2 did not receive the $100,000 check, Charity-1 conducted an initial investigation and learned that on or about June 9, 2017, an individual named ANDRE LAMAR, the defendant, had deposited the Check at an area bank ("Bank-1"). From my discussions with personnel at Charity-1, I learned that LAMAR has no relationship with Charity-1 or Charity-2.

    c. Thereafter, Charity-1 filed a complaint with the NYPD, and I was assigned to investigate the complaint.

    4. From my investigation, conversations with Bank-1, and conversations with the New York Department of State's Division of Corporations ("NYS DOS"), I learned the following:

    a. According to NYS DOS records, on or about May 31, 2017, ANDRE LAMAR, the defendant, opened a New York corporation with the exact same name as the payee on the Check, except that he added the words "Management, Inc." to the end of Charity-2's name.

    b. According to NYS DOS records, LAMAR paid for this new corporation's certificate of incorporation with a credit card in the name of "Andre Lamar," with a particular address of record on Osgood Avenue in Staten Island, New York (the "Osgood Ave." address).

    c. From my conversations with Bank-1, my review of video from Bank-1, and my review of information and records provided by Bank-1, I learned that after opening the new corporation in Charity-2's name, on or about June 8, 2017, LAMAR went to a Bank-1 branch location in Stamford, Connecticut, and opened a bank account in Charity-2's name.

    d. According to Bank-1's records, video photography, and information provided by Bank-1, LAMAR opened the bank account by using a New York State driver's license and making an initial deposit of $250.00. LAMAR provided his newly-obtained certificate of incorporation from the NYS DOS, and falsely represented to Bank-1 that he was the owner of Charity-

2. Both his driver's license and his initial bank application listed LAMAR's Osgood Ave. address, and LAMAR signed the bank signature card with his name, Andre Lamar.

e. From my conversations with Bank-1, my review of Bank-1's records, and my review of LAMAR's banking transactions, I learned that on or about June 9, 2017, at a Bank-1 location in Pearl River, New York, LAMAR deposited the Check that was intended for Chairty-2 into in his Bank-1 account. The back of Charity-2's check was endorsed with the name "Andre Lamar." According to Bank-1's records, at this time, LAMAR's Bank-1 account had $100,250.00 in it, which consisted of the $250 initial deposit made by LAMAR, and the $100,000 in funds that had been stolen from Charity-1. LAMAR then made a cash withdrawal of $200.00 at the same location.

5. Through my conversations with Bank-1 officials and my review of banking transaction records, I have learned that after he deposited the $100,000 check, ANDRE LAMAR, the defendant, began to withdraw additional funds from his Bank-1 account. Specifically, during the month of June 2017, LAMAR made at least six withdrawals totaling approximately $88,000.

6. Bank-1 provided me with video of many of the bank teller transactions conducted by ANDRE LAMAR, the defendant. From my review of this video and associated still photography, I determined that the person depicted in the Bank-1 surveillance videos making withdrawals is LAMAR, because, among other things, his picture is the same as the person in the photograph on Andre Lamar's driver's license. In addition, the personal identifying information that LAMAR provided to Bank-1 matches the name and address on his driver's license, as well as information in various law enforcement databases. Moreover, LAMAR signed his Bank-1 signature card with his name, and listed himself as the owner of the Bank-1 account.

7. From Bank-1, I also learned that, when Bank-1 discovered that ANDRE LAMAR, the defendant, was not the true owner of Charity-2, Bank-1 froze LAMAR's account. Only approximately $12,000 was left in the Bank-1 account when it was frozen.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ANDRE LAMAR, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

DET. *[signature]*
JOHN McAULIFFE
Detective
New York City Police Department

Sworn to before me this
6th day of December, 2017.

*[signature]*

THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York